BUSSEY & Another v. EXCELSIOR MANUFACTURING COMPANY.

EXCELSIOR MANUFACTURING COMPANY v. BUSSEY & Another.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Argued January 8th, 1884.—Decided January 21st, 1884.

*Patent.*

The first four claims of reissued letters patent No. 3,815, granted to Esek Bussey and Charles A. McLeod, February 1st, 1870, for a " cooking-stove," the original patent, No. 56,686, having been granted to said Bussey, as inventor, July 24th, 1866, and reissued to him, as No. 3,649, September 28th, 1869, namely : "1. A diving-flue cooking stove with the exit-flue so constructed as to inclose on the sides and bottom the culinary boiler or hot-water reservoir B ; 2. A diving-flue cooking-stove with the exit-flue constructed across the bottom and up the rear upright side of the culinary boiler or hot-water reservoir B ; 3. A diving-flue cooking-stove constructed with an exit passage, F, below the top of the oven, and an exit-flue, E E', in combination with an uncased reservoir, B, attached to the rear of the stove, and placed just above such exit passage, and so arranged that the gases of combustion, in passing through such exit-flue, will impinge upon or come in direct contact with said reservoir, substantially as and for the purposes hereinbefore specified ; 4. An exit-passage, F, constructed in the rear of a diving-flue cooking-stove and below the top of the oven, in combination with an uncased reservoir, B, attached to the rear of the stove, the bottom of which reservoir is also below the top of the oven, and so arranged that the gases of combustion will come in contact with, and heat such reservoir by, a direct draft from the fire-box to the smoke-pipe," are limited to a structure in which the front of the reservoir has no air space in front of it, and in which the exit-flue does not expand into a chamber at the bottom of the reservoir, and in which the vertical part of the exit-flue does not pass up through the reservoir.

Hence, those claims are not infringed by a stove in which, although there are three flues, and an exit-passage below the top of the oven, and a reservoir the bottom of which is below the top of the oven, no part of the rear-end vertical plate is removed so as to allow the gases of combustion to come into direct contact with the front of the reservoir, nor is any such plate employed as the plate *w w* of the patent, but there is a dead air-space between the rear plate of the flue and the front of the reservoir, and the exit-flue is not a narrow one, carried across the middle of the bottom of the

reservoir, as in the patent, but the products of combustion, on leaving the flue space, pass into a chamber beneath the reservoir, the area of which is co-extensive with the entire surface of the bottom of the reservoir, and the vertical passage out of such chamber is not one outside of the rear of the reservoir, but is one in and through the body of the reservoir, and removable with it.

The claim of letters patent No. 142,933, granted to David H. Nation and Ezekiel C. Little, as inventors, September 16th, 1873, for an "improvement in reservoir cooking-stoves," namely, "1. The combination, with the back-plate I of the cooking-stove A, of the reservoir C, arranged on a support about midway between the top and bottom plates of the stove, and the air-chamber b between the stove back and reservoir front, open at the top, and communicating with the air in the room, substantially as and for the purposes set forth ; 2. The combination, with the stove A and reservoir, C, of the small opening a, the sheet-flue G under the entire bottom of the reservoir, and the small exit-passage or pipe E, all substantially as and for the purposes herein set forth," are void for want of novelty.

The claims of letters patent No. 142,934, granted to said Nation and Little, September 16th, 1873, for an "improvement in reservoir cooking-stoves," namely, "1. The detachable base-pan or flue-shell D, attached to the body at a point near the centre of the back plate of the stove, by means of hooks a a cast on the base-pan, and pins b b on the stove body, substantially for the purposes herein set forth ; 2. The portable reservoir F, with the flue E in the rear side, in combination with the portable base-pan or flue-shell D, substantially as and for the purposes herein set forth ; 3. The combination, with a three-flue stove having damper H arranged as described, of the portable base-pan or flue-shell D and warming-closet G, all substantially as and for the purposes herein set forth," are void for want of novelty.

There was no invention, in claim 1, in using, to attach the base-pan, an old mode used in attaching other projecting parts of the stove.

Claims 2 and 3 are merely for aggregations of parts and not for patentable combinations.

*Mr. Charles J. Hunt* for Bussey & Another.

*Mr. S. A. Duncan* for Excelsior Manufacturing Company.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity brought in the Circuit Court of the United States for the Eastern District of Missouri, by Esek Bussey and Charles A. McLeod against the Excelsior Manufacturing Company of St. Louis, a corporation, for the infringement of three several letters patent, being (1) reissue No. 3,815, granted to the plaintiffs, February 1st, 1870, for a "cooking-

stove," the original patent, No. 56,686, having been granted to said Bussey, as inventor, July 24th, 1866, and reissued to him, as No. 3,649, September 28th, 1869; (2) letters patent No. 142,933, granted to David H. Nation and Ezekiel C. Little, as inventors, September 16th, 1873, for an "improvement in reservoir cooking-stoves;" (3) letters patent No. 142,934, granted to said Nation and Little, as inventors, September 16th, 1873, for an "improvement in reservoir cooking-stoves." After an answer and proofs, the Circuit Court made a decree finding no infringement of No. 3,815 and dismissing the bill as to that patent; decreeing that the other two patents were valid and had been infringed as to all their claims; and awarding a perpetual injunction as to those claims and an accounting before a master. The master reported one cent damages. The plaintiffs excepted to the report, claiming $14,972 damages. The court confirmed the report and made a decree accordingly, which also provided that the entire costs to be taxed in the suit should be divided and that the plaintiffs should pay $\frac{5}{7}$ of them and the defendant $\frac{2}{7}$. Both parties appealed to this court.

The specification of No. 3,815 says:

"Figure 1 is a side elevation; Fig. 2, a rear elevation; Fig. 3, a plan; Fig. 4, a vertical section at the line $z z$; Fig. 5, a front view of a section at the line $y y$; and Fig. 6, a top view of a partial section at the line $x x$, all of a cooking-stove embodying my said invention, like parts being marked by the same letters in all the figures, and the arrows therein being indicative of the courses in which the gases of combustion pass through the stove. One part of my invention consists in arranging a culinary boiler or hot-water reservoir in the rear of the oven of a diving-flue cooking stove, with an exit-flue extending down the front, under the bottom and up the rear of the said reservoir, substantially as hereinafter described and specified. It also consists in arranging a culinary boiler or hot-water reservoir in the rear of the oven of a diving-flue cooking-stove, with an exit-flue leading from some point in the rear of the vertical flue or flues below the top of the said oven, and continuing under the bottom and up the rear side of said reservoir, substantially as hereinafter described and specified. It also con-

sists in the arrangement of a diving-flue cooking-stove, with an exit-passage constructed in the vertical rear flue or flues thereof, and below the top of the oven, in such a manner that the gases of combustion, after passing through such exit-passage, will impinge

upon or come in contact with the bottom or sides of a reservoir placed in the rear of the stove, and just above said exit-passage, substantially as hereinafter described and specified. It also consists in the employment of a thin plate or sheet of metal between the front plate of the reservoir and the rear-end vertical flues of

the said stove, substantially as shown and specified. In illustration of my invention, the aforesaid drawings represent a cooking-stove having an oven, A, a culinary boiler or hot-water reservoir, B, arranged opposite to the rear upright side or end $d$ of the oven, and an exit-flue, E E', extended from the central vertical flue K of said stove at a point below the top of the oven, under or across the bottom $g$ of the reservoir, and from thence up along the rear upright side of said boiler or reservoir to the draft-pipe I. For the purpose of allowing the boiler to heat more readily, a portion of the rear-end vertical plate of said stove is removed, so as to uncover the upper portion of the rear-end vertical flues, and the front of the boiler is attached to the rear of said flues, in the manner shown and described in my reissued patent of July 24th, 1866. Between the inner side of the boiler B and the rear-end vertical flues K and L L', a plate may be employed, indicated by dotted line $w$ $w$. The object of this plate is as follows: It has been ascertained by experience that when, during the use of the oven for baking purposes, a large quantity of cold water is suddenly poured into the reservoir, and there is nothing between the front of the boiler and gases of combustion passing through the rear-end vertical flues, the heat of the said gases will be so much absorbed by the reservoir as to sensibly cool the oven and interfere with the process of baking. To obviate this I employ the thin plate $w$ $w$, placed between the front of the reservoir and the said rear-end vertical flues, and which, while it allows sufficient heat to pass through it to aid in heating the boiler, protects the front thereof from the direct impact of the gases of combustion, and preserves an equable heat in the oven. In case the said plate is dispensed with the inner side J of the said boiler will form a part of the lateral rear casing of the said rear-end vertical flues, and will be heated by direct contact with the gases of combustion as they pass down and up the same. M is the fire-box, and N and R the top and bottom flues of said stove. The operation of my said invention is as follows: A fire being kindled in the fire-box M, and the damper Q at the top of the oven being open, so as to allow of a direct draft, the gases of combustion from the said fire-box will pass down the middle vertical flue K, through the exit-passage F and exit-flue E E', to the smoke-pipe I, heating the contents of the reservoir in its passage through the exit-flue, as aforesaid. By this mode of construction I am enabled to obviate what

has been heretofore the greatest objection to reservoir-stoves of this class, namely, that the reservoirs would not heat with a direct draft. It will also be observed that, by this device of constructing the exit-passage below the top of the oven, I can at the same time by a direct draft heat the rear side of the oven and the reservoir, instead of wasting the heat by carrying it directly to the chimney. When the damper Q is closed, for the purpose of heating the oven, the gases of combustion will pass down the side vertical flues L L and under the bottom of the oven, returning through a central horizontal flue to the central vertical flue K, from which they pass through the exit-flue E E', aforesaid. I am aware that cooking-stoves have been in use in which the reservoir has been incased or inclosed on all sides except the top by a kind of expanded flue, through which the gases of combustion are made to pass. The advantages of my plan over this device are twofold : First, it is much more economical, requiring far less material and labor to construct it ; and, second, by confining the heat and gases of combustion to a small space at the bottom and rear of the reservoir, the contents thereof will be much more effectually heated than where the products of combustion are admitted to an extensive flue-space and permitted to rise and expend their heat at or near the top of the reservoir."

The claims of the patent, the first 4 only of which are alleged to have been infringed, are as follows :

" 1. A diving-flue cooking-stove with the exit flue so constructed as to inclose on the sides and bottom the culinary boiler or hot-water reservoir B. 2. A diving-flue cooking-stove with the exit-flue constructed across the bottom and up the rear upright side of the culinary boiler or hot-water reservoir B. 3. A diving-flue cooking-stove constructed with an exit passage, F, below the top of the oven, and an exit-flue E E', in combination with an uncased reservoir, B, attached to the rear of the stove, and placed just above such exit passage, and so arranged that the gases of combustion, in passing through such exit-flue, will impinge upon or come in direct contact with said reservoir, substantially as and for the purposes hereinbefore specified. 4. An exit-passage, F, constructed in the rear of a diving-flue cooking-stove and below the top of the oven, in combination with

an uncased reservoir, B, attached to the rear of the stove, the bottom of which reservoir is also below the top of the oven, and so arranged that the gases of combustion will come in contact with and heat such reservoir by, a direct draft from the fire-box to the smoke-pipe.   5. In a cooking-stove wherein the rear-end vertical plate, or a portion of the same, has been removed for the purpose of heating a reservoir placed in the rear thereof, the shield-plate w w, in combination with the uncased reservoir B and the rear-end vertical flues K, L, and L', substantially as and for the purposes hereinbefore described and specified."

The defendant's stove has three flues and an exit-passage below the top of the oven, and a reservoir, the bottom of which is below the top of the oven; but no part of the rear-end vertical plate is removed so as to allow the gases of combustion to come into direct contact with the front of the reservoir, nor is any of such plate employed as the plate w w of the patent, but there is a dead air-space between the rear plate of the flue and the front of the reservoir.   The exit-flue is not a narrow one, carried across the middle of the bottom of the reservoir, as in the patent, but the products of combustion, on leaving the flue-space, pass into a chamber beneath the reservoir, the area of which is co-extensive with the entire surface of the bottom of the reservoir; and the vertical passage out of such chamber is not one outside of the rear of the reservoir, but is one in and through the body of the reservoir, and removable with it.   In view of the earlier patents put in evidence, we are of opinion that the 4 claims in question must be limited to a structure in which the front of the reservoir has no air-space in front of it, and in which the exit-flue does not expand into a chamber at the bottom of the reservoir, and in which the vertical part of the exit-flue does not pass up through the reservoir.   Under this construction there is no infringement of No. 3,815.

Claim 1, in requiring that the exit-flue shall "inclose on the sides and bottom," the reservoir, requires, in the language of the text of the specification, that it shall extend "down the front, under the bottom and up the rear" of the reservoir;

and it does not admit of an air-space in front of the reservoir; nor is it limited to what is called a low-down boiler or reservoir. The Getz patent of 1840 shows an exit-flue passing under the bottom and up the rear side of a reservoir. The Spaulding or Paris patent of 1858 shows a diving-flue inclosing the bottom and one of the sides of a reservoir.

Claim 2 is not limited to a low-down boiler or reservoir. If a stove with an exit-flue constructed across the bottom and up the rear upright side of a boiler or reservoir existed before, there was nothing patentable in applying such construction to a diving-flue stove. The combination of exit-flue and reservoir with which claim 2 is concerned has no patentable relation to the arrangement of the internal flues of the stove. The Getz patent of 1840 shows an exit-flue extending across the bottom and up the rear upright side of a boiler. In the Stewart patent of 1859 the products of combustion enter a chamber under the reservoir and thence pass off by a pipe embraced within the walls of the reservoir. The exit-flue of claim 2 must, therefore, be limited to one which passes under the bottom of the reservoir without expanding into a chamber substantially co-extensive with the area of the bottom of the reservoir, as in the defendant's stove and in the Stewart patent of 1859; and also to one in which the escape-pipe is outside of the rear wall of the reservoir and not within the reservoir, as in the defendant's stove and in the Stewart patent of 1859.

Claim 3 adds to claim 2 only the feature of having the exit-passage or exit-orifice into the exit-flue, below the top of the oven. There is no patentable relation between the combination of exit-flue and reservoir and the location of the exit-passage with reference to the oven, in view of the state of the art. In the Stewart patent of 1859 the exit-opening was on a level with the top of the oven and led into a chamber under the reservoir. In the Spaulding or Paris patent of 1858, and in the Bussey patent of 1865, the bottom of the reservoir was below the top of the oven. There was no invention in causing the gases to act on a low-down reservoir in the same way in which they had acted before on an elevated reservoir; and no invention in lowering the exit opening to correspond

with the depression of the reservoir, even though the incidental effect was to heat by a direct draft, at the same time, the reservoir and the rear side of the oven.

Claim 4 adds to claim 3 only the feature of heating the reservoir by a direct draft from the fire-box to the smoke-pipe. This, however, is only a statement of the effect produced in a structure made according to the first three claims. In the Getz patent of 1840 and in the Stewart patent of 1859 the exit-pipe was in the rear of the reservoir, and the gases were brought into contact with the bottom of the reservoir, and it was heated by a direct draft. There is really nothing in claim 4 beyond what is found in claim 3.

The specification of No. 142,933 is as follows:

"Our invention relates to that class of cooking-stoves in which a water reservoir is situated at the rear end of the stove; and it consists in the arrangement of the reservoir upon an extended support at the rear of the stove, so that an air-chamber, opening at its top into the air of the room, is left between the back-plate of the stove and the front of the reservoir, thereby protecting the front of the same from becoming burned out by being in direct contact with the heat from the fire. It also consists in a broad sheet-flue arranged under the reservoir, the heated air for which enters through a small passage in the back-plate of the stove, and, after circulating in said flue, passes out through the small opening in the rear thereof, all as more fully hereinafter set forth. . . . Figure 1 is a longitudinal vertical section of our stove; Fig. 2 is a transverse vertical section of the same through the water-reservoir; Fig. 3 is a plan view of the reservoir; and Fig. 4 is a front view of the sheet-flue under the bottom of the reservoir. A represents the top plate of the stove. B is the oven; C, the water-reservoir; D, the centre one of the three flues of the stove; and E, the exit-flue, located in the rear of the reservoir C. This reservoir is located upon a support therefor, which extends rearward from a point about half way between the top and bottom plates of the stove, and which may either be attached to or form part of the stove, and a sheet-flue, G, is provided in the same under the bottom of the reservoir C. The heat, entering this flue,

passes through the small centre passage *a* in the stove-back I. It is there spread and retained under the reservoir until it gradually ascends through the small passage or exit-flue E. By this con-

struction the rapid exit of the heated air from under the reservoir is prevented, and the heat, being retained under the bottom of the reservoir, causes the water in the same to become hot in a short time. The reservoir C is so arranged with respect to the

back-plate I of the stove that an air-space, *b*, communicating with the air of the room at the top, is left between the front of the reservoir and the back-plate. By this means the outside air will pass down between the back-plate and front of the reservoir and prevent the front of the reservoir from burning out, which would be the case if the parts were in direct contact, especially when the water in the reservoir becomes low. In the ordinary method the flame is made to strike directly upon the front surface of the reservoir, thereby rendering it liable to crack while replenishing with cold water upon the heated plates. The opening *a* in the back-plate I of the stove is of the same width as the centre-flue D, and the products of combustion pass through said opening into the sheet-flue G, which thus has a contracted entrance and a contracted exit. When using the direct draft the damper *d* of the centre flue D is turned downward and rests against the back-oven plate, as shown by the dotted lines in Fig. 1. At such times the heat passes down the centre-flue D of the back, through the opening *a* in the back-plate I, into the sheet-flue G under the bottom of the reservoir, and out of the exit-flue E. When the indirect draft is used, the damper *d* occupies the position shown in Fig. 1, and at such times the heat passes down the usual side flues and under the bottom of the oven to the front of the stove, where it turns into the centre-flue D and passes back through the opening *a* to the sheet-flue G under the bottom of the reservoir and out of the exit-flue. With a stove thus constructed, the reservoir is heated almost entirely from the bottom, and the heat acts upon the entire surface of the bottom of the reservoir, and when the reservoir is but partially filled there is no danger of the heat acting against, and burning out, the top part of the front side of the reservoir. We do not claim under this patent a flue-shell and rear central extension that is detachable from the stove-body by means of hooks on the one and catches or pins on the other, nor do we specifically claim a reservoir with a flue in its rear, as these elements of invention are the subject of a separate application for a patent, now pending ; neither do we wish to be understood as claiming the arrangement of the reservoir and flues for heating the same in front of the fire-box of the stove, as shown in our patent of May 6th, 1873, No. 138,682."

The claims of No. 142,933 are 2 in number, as follows, and the infringement of both is admitted :

" 1. The combination with the back-plate I of the cooking-stove A, of the reservoir C, arranged on a support about midway between the top and bottom plates of the stove, and the air-chamber *b* between the stove-back and reservoir-front, open at the top and communicating with the air in the room, substantially as and for the purposes set forth. 2. The combination, with the stove A and reservoir C, of the small opening *a*, the sheet-flue G under the entire bottom of the reservoir, and the small exit-passage or pipe E, all substantially as and for the purposes herein set forth."

The point of invention in claim 1 is in so arranging the reservoir as to have an air-space between the front plate of the reservoir and the back plate of the stove, to a sufficient extent to prevent the flame from striking against the upper part of the front plate of the reservoir, which it would do if the upper part of the back plate of the stove were cut away, and there were no such air-space. It is the upper part of the front side of the reservoir which, as the specification states, is liable to be burned out by the direct action of the flame, as the water in the reservoir is lowered. In the McDowell patent of 1871 all the upper part of the reservoir is protected by an air-space, open at the top, between the reservoir and the stove.

The point of invention in claim 2 is to take the gases through a small opening into a broad sheet-flue under the bottom of a reservoir and out through another small opening in the rear, so that they will circulate in the broad flue and act on the entire surface of the bottom of the reservoir. The Stewart patent of 1859 shows the same arrangement with an elevated reservoir, but there is no invention in applying it to a low-down reservoir. The Tiffany patent of 1869 shows the same arrangement with a low-down reservoir.

The specification of No. 142,934 says:

"The nature of our invention consists in the construction and arrangement of a cooking-stove with a portable base-pan or flue-shell, and the means for attaching the same, as will be hereinafter more fully set forth. . . . Figure 1 is a longitudinal vertical section of our improved cooking-stove; Fig. 2 is a side view of

the rear end of the same ; Fig. 3 is a plain view of a loose cover or plate for the base-pan ; and Fig. 4 is a perspective view of the portable base-pan or flue-shell. A represents the main baking-

oven of the stove ; B is the top flue ; B B′, the vertical and horizontal side flues ; C is the centre flue ; D is the base-pan or flue-shell ; E, the exit-flue passing up the rear side of the reservoir ;

F is the reservoir ; G, the warming-closet ; H, the damper ; I, the fire-chamber ; and J, the division-plate.   When using the direct draft, the damper H occupies a line parallel with the back plate of the main oven, hanging down in the centre flue of the back part of the stove.   At such time the products of combustion pass from the fire chamber I, along the top flue B, and down the centre flue, between the back oven-plate and the division-plate J, into the base-pan D, and out of the exit-flue E.   When using the indirect draft the damper H occupies the position shown in Fig. 1.   At such time the products of combustion pass over the top oven-plate flue B, and down the vertical end flues B', into corresponding flues at the bottom, making the turn into the centre flue of the bottom at C, through said bottom centre flue, into and through the rear centre flue, through the division-plate J, into the base-pan flue D, and out of exit-flue E, so that, whether using the direct or indirect draft, the reservoir is heated only on its bottom surface.   The base-pan D is made separate from the stove, and provided on each side with a hook projection, $a$, to be fastened on a pin, $b$, projecting from the side of the stove.   By this means the base-pan can readily be attached and detached, and when attached it fits in the upper end and forms the top of the warming-oven G.   K represents a plate with two boiler-holes in it, which can be used when the reservoir is removed or should become broken in shipment, thus converting it into a six-hole stove.   It is our purpose to insert a loose centre piece between the boiler-holes in the plate K, so that an ordinary wash-boiler can be used on said plate, if desired.   The novelty of this invention consists in the portability of the reservoir base-pan D and in the warming-closet attachment, whereby we economize space in shipment, and whereby repairs can be made at a very small cost and by unskilled workmen, as all the attachments will be shipped separate from the body of the stove, and mounted after they reach their destination.   Should the reservoir become broken in shipment or otherwise, the plate K can be used, thus converting it into a six-hole stove, upon which an ordinary wash-boiler can be used in case of emergency.   The front bottom corner of the reservoir rests upon a strip, $d$, attached to the division-plate J, which thus entirely shuts off the air-space at the bottom.   By means of the base-pan flue D extending under the whole bottom of the reservoir F and the space between the reser-

voir and the division-plate J, the reservoir becomes heated only on its bottom surface, where there will always be water, if any in the reservoir at all. The exit-flue E passes up through and forms part of the reservoir F at the back or rear side, as shown. We do not claim, under this specification, the combination of the reservoir with the back of the stove when an air-space open at the top is left between the two, as seen in the drawings, nor do we claim the sheet-flue under the reservoir in the shell D, as both of these arrangements are the subject-matter of a separate application for a patent, now pending."

The claims of No. 142,934 are 3 in number, as follows, and the infringement of all of them is admitted:

" 1. The detachable base-pan or flue-shell D, attached to the body at a point near the centre of the back plate of the stove, by means of hooks *a a* cast on the base-pan, and pins *b b* on the stove-body, substantially for the purposes herein set forth. 2. The portable reservoir F, with flue E in the rear side, in combination with the portable base-pan or flue-shell D, substantially as and for the purposes herein set forth. 3. The combination, with a three-flue stove, having damper H arranged as described, of the portable base-pan or flue-shell D and warming-closet G, all substantially as and for the purposes herein set forth."

The Tiffany patent of 1869 shows a low-down reservoir at the rear of a three-flue stove, and a warming closet below the reservoir. The gases pass from the flue-space into a base-pan or chamber which is immediately below the reservoir, and forms the top of the warming-closet. The flue by which the gases escape from the base-pan is in the rear of the reservoir and is removable with it. The Tiffany stove, having three flues, must have a damper to open and close the middle flue. The specification of the Tiffany patent states that the reservoir and the warming-closet are capable of being attached to and detached from the stove, so that the stove is complete without them and they are complete without being attached; and it also states that they may be attached to the stove by lugs or hooks, either cast in the back of the stove, with a corresponding eye in the side of the case surrounding the reservoir, or in the top and

side of the reservoir, or the hook and the eye may be reversed. A detachable base-pan existed before, and hearths and ash-pans existed attached by lugs and hooks in the same way as the defendant's base-pan. A portable reservoir was old, with an escape-pipe or flue forming a part of the reservoir. A damper for the middle flue was old. A warming-closet below a base-pan and that below a reservoir were old. In view of the state of the art there was no invention, in claim 1 of the patent, in using to attach the base-pan an old mode used in attaching other projecting parts of the stove. Claim 2 is merely for an aggregation of parts, and not for a patentable combination, there being no patentable relation between a portable reservoir with a flue in its rear side and the existence or portability of a base-pan beneath it. In claim 3 there is merely an aggregation of parts, there being no patentable relation between a damper for the middle flue of a three-flue stove, and the existence or portability of a base-pan or the existence of a warming-closet.

*The decree of the Circuit Court is reversed, with costs in this court to the Excelsior Manufacturing Company on both appeals, and the case is remanded to the Circuit Court with direction to dismiss the bill, with costs.*