VERMONT FARM MACH. CO. v. GIBSON, (two cases.)

(Circuit Court of Appeals, Second Circuit. June 12, 1893.)

1. PATENTS FOR INVENTIONS—ANTICIPATION—WATER-SEALED CREAMING CANS.
    Letters patent No. 187,516, issued February 20, 1877, to William Cooley, for "a process of treating milk for raising cream by sealing with water and air the cover applied directly to the vessel containing the milk," was

not anticipated by earlier patents for coolers for preserving milk, butter, etc., which had no water-sealing idea, or by the Garrard patent, No. 59,993, of September 10, 1867, which showed the nearest approach to the Cooley invention, and did produce water-sealing by a cover applied to the water tank, instead of separate covers applied to each can contained therein. 50 Fed. Rep. 423, affirmed.

2. SAME.

Letters patent No. 321,340, issued June 30, 1885, to Francis G. Butler, for an improvement in creaming cans, consisting substantially of the Cooley can having its cover raised somewhat from the top of the can by internal supports, so as to permit vegetable odors in the milk to pass off and be absorbed by the water, was not anticipated either by the Garrard patent, or by the Timby patent, No. 180,962, of August 8, 1876, for an improved apparatus for manufacturing solar salt.

3. SAME—LICENSE—RIGHTS OF PURCHASER.

A purchase of a creamery from the owner of the Cooley patent, with cans for raising cream by his process, gives the purchaser no right to practice the process by another water-sealing creamery purchased from a different maker. 50 Fed. Rep. 423, affirmed.

4. SAME—SUITS FOR INFRINGEMENT—STIPULATIONS—APPEAL.

Two suits were brought by plaintiff against defendant for infringement of two patents relating to the same subject-matter, and a stipulation was filed that evidence taken in either case might be used in the other. Plaintiff introduced in one case a certain patent, for the purpose of explaining a prior decision in regard to the patent sued on, but no testimony was given in relation to such patent, and it was not mentioned in the pleadings of either party. *Held,* that the stipulation did not authorize defendant, in the appellate court, to rely on this patent as an anticipation in the other case.

Appeals from the Circuit Court of the United States for the District of Vermont.

In Equity. These were two suits by the Vermont Farm Machine Company against Hugh G. Gibson for infringement of two patents. In one of the cases an injunction was heretofore granted. See 46 Fed. Rep. 488. There were final decrees for complainant, (50 Fed. Rep. 423,) and defendant appeals. Affirmed.

Wm. Edgar Simonds, for complainant.
Geo. G. Frelinghuysen, for defendant.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The Vermont Farm Machine Company brought before the circuit court for the district of Vermont two suits in equity against Hugh G. Gibson, an inhabitant of said district, which were respectively founded upon the alleged infringement of two letters patent, viz. No. 187,516, dated February 20, 1877, to William Cooley, for a new process of raising cream from milk, and No. 321,340, dated June 30, 1885, to Francis G. Butler, for an improvement in creaming cans. These appeals are from final decrees of the circuit court in said suits in favor of the complainant for perpetual injunctions, and for costs and for the sums which the parties had agreed upon as nominal damages; the complainant waiving other damages, and also a recovery of the defendant's profits. The bills in equity were brought in 1891, and did not originally aver that Gibson was an inhabitant of the district

of Vermont, whereupon the defendant demurred to the jurisdiction of the court in each case, upon the ground that under the act of August 13, 1888, the bill must affirmatively appear to have been brought in the district of which the defendant is an inhabitant. Subsequently the respective counsel signed stipulations which were duly filed in the clerk's office. Each stipulation stated that the "bill of complaint shall be, and hereby is, amended by inserting immediately after the words 'Hugh G. Gibson, of Newbury, in the state of Vermont,' the words 'and an inhabitant of the district of Vermont.'" The defendant's first point is that the circuit court, which had overruled the demurrer, without knowing that these stipulations had been filed, erred in so doing. The stipulations which provided that the bills not only should be, but were, amended, render examination of that point unnecessary. The improvement described in the Butler patent is so closely related to the apparatus and process of the Cooley patent that it is proper to include an examination of each patent in one opinion.

The nature and the advantages of the improved process of the Cooley patent were clearly stated in the specification of the patent as follows:

"The ordinary mode of raising cream is with open pans, either shallow or deep, and then by hand labor skimming the cream from the surface after the milk has stood, say, from thirty-six to forty-eight hours. This mode is open to several serious objections, among which may be named the exposure of the milk to the atmosphere, from which it attracts insects and absorbs gases and odors often very deleterious, and from which it collects and retains dust and dirt floating in the air; the agitation of its surface from wind and other causes; the great length of time required to raise the cream; the unavoidable lack of uniformity in the quality of the cream, and, consequently, in the butter made from it, because of the various subtle and invisible atmospheric causes which tend to taint, acidify, or otherwise vitiate it; the positive and direct exposure to all the sudden changes—electrical, thermal, and otherwise—of the atmosphere; and the necessity of having pans enough to hold the milk of two or more days' milking. When milk is set in open vessels which are cooled by water underneath them, it being at a lower temperature than the surrounding atmosphere, and being, as is well known, a ready absorbent of odors and taints, it will absorb from the air by condensation the moisture contained in it, together with its impurities. By my present invention I water-seal the can or other vessel containing the milk to be treated, whereby all possibility of the entrance into it of foreign matter, gases, or odors is prevented; and when I wish to bring the whole to a uniform temperature, to any degree desired, I then submerge this vessel entirely in water of the required low degree. The effect of these two steps of the operation is the production of a better quality and of an increased quantity of cream, and in a far less period of time than usual; the securing of a uniformity of quality all the year round; great economy in time, apparatus, and expense; a superiority in the skimmed milk; the production from the cream thus raised of a butter having not only a better quality, but also a better keeping property; and the capacity of the remaining milk, technically called 'skimmed milk,' of producing a better character of cheese. My invention can be very simply and cheaply practiced, and by very simple means,—such, for instance, as a tank or vessel, B, for holding water; a pan or can, (or cans,) A, preferably cylindrical, for holding the milk, provided with a removable cover, C, shaped similarly to an ordinary tin pan, and placed upside down on top of the pan, A, and held down by an appropriate weight or fastening; the overlapping or flaring sides of the cover leaving an angular space between such sides and the vessel, A. No packing is required to make this

cover water-tight when the water is high enough in the tank, B, to reach up to or a little above the lower edge of the cover, because the air in this annular space is then unable to rise and escape, and remains there, thus making a perfect air packing, and the whole can is thus simply but completely water-sealed. The water-sealing is a distinct thing from submerging; and, if the water be no higher than is sufficient thus to seal the cover, all the advantages due to the exclusion of the outer atmosphere and atmospheric effects are completely attained, and a nearer approximation is also made to an equalization of the temperature of the contents of the can than by any other method known to me."

The first claim of the patent, which is the only one said to have been infringed, is for water-sealing, and not for submerging, and is as follows:

"(1) The process of treating milk for raising cream by sealing with water and air the cover applied directly to the vessel containing the milk, substantially as set forth."

The process which consists in water-sealing each separate can of milk by immersing the can in a tank of water which is high enough in the tank to reach up to or a little above the lower edge of the cover which overlaps the sides of the can, thus making an air packing in the annular space between the sides of the cover and the can, has been very generally introduced into the creameries of the north, and has helped to make the manufacture of butter upon a large scale successful. The attempt, by immersing cans in water, to cool milk in large quantities, and to keep it in proper condition of temperature while the cream rises, was made before the date of the patent in suit, and the results of two of the different attempts are described in letters patent No. 182,700, dated September 26, 1876, to Dexter Pettingill, and No. 184,062, dated November 7, 1876, to William Cooley. Milk-cooling cans were also invented, and are described in letters patent No. 59,993, dated November 27, 1866, to William Garrard; to John Buckley, No. 68,696, dated September 10, 1867; and to J. F. Hawkins, No. 140,919, dated July 15, 1873. The inner milk can of the Pettingill device was closed by an ordinary cover. The space between the inner can and the outside box was filled with water. Above the box, and hinged thereto, was an ice box, with perforated bottom, which was closed by a lid. The melted water from the ice box dropped upon the lid of the milk can, and a water pipe near the top of the can conducted the waste water from the box.

In the Cooley device of 1876, there is a flange around the upper edge of the inner milk can, to form a seat for a rubber packing upon which the lower side of the edge of the can cover rests. By means of an air pump, detachably connected with a hole in the center of the cover, the air in the can is pumped out, forming a vacuum above the milk. The object of the rubber packing is to prevent the subsequent introduction of air into the can. In neither device was any attempt made to seal the can with water or with air. The object of each invention was to cool the milk, but the idea of the formation of a water-seal did not enter into either improvement. In the Buckley and the Hawkins cans, and in the unpatented cans of John C. Pennington there is the same absence of

the principle of the patent in suit.   The Morandi patent of 1868, for an improved cooling apparatus, and the Cotton patent of 1858, for a preserve can, have no relation to the Cooley creamery.

The Garrard invention had a water-sealing idea, and therefore is the nearest approach to the Cooley invention of 1877 of any of the alleged anticipating devices.   It was a cooler for preserving milk or butter or other articles, and consisted, in general, of a vessel or tank fitted with a lid, and forming a water chamber.   The lid fitted into this vessel by a flange which made a water-tight joint by dipping into the water in the vessel.   A smaller vessel containing the milk was placed in the tank.   The cover was not the cover of the milk can, but of the tank.   In the water-sealing apparatus of Cooley, the cover is applied directly to each can, and only that portion of air which fills the annular space between the cover and the sides of each can comes in contact with the milk.   If the Garrard cover should only be relied upon in a Cooley creamery, which may contain 12 or 16 cans, the beneficial results of air exclusion would be much diminished.   Besides, the size and weight of the Garrard cover would render its use in such a creamery impracticable.   But the defendant says that, even if the air-tight joint of Garrard was not a joint for each can, but for the tank which contained the cans, it suggested the Cooley improvement, and deprived it of the character of invention.   The Garrard cooler was simply for cooling milk or butter.   It was not for a creamery, whose needs differ very much from those of a mere cooling apparatus, because for the purity of the butter the milk in each can in a creamery must be kept so far as is possible out of contact with the odors and heat of the milk in other cans.   When Cooley ascertained that his attempt in 1876 to bottle up the milk entirely was too expensive for practical use, and that a cover for the entire tank was inadmissible, because of the danger that the milk in each can might become contaminated, and that in a creamery it was indispensable that each can should be sealed, but sealed as simply as possible, and that a water and air seal combined simplicity and efficiency, his process which carried these principles into effect was the work of an inventor.

In 1883, Gibson bought from the complainant a creamery containing four cans, which were made under the patent in suit.   This creamery he discarded, reserving nothing but the wooden exterior of the tank, into which the Barden Automatic Cream Separator Company put a metal lining, six cans, and six Butler covers.   It is claimed that the sale by the complainant of its four-can creamery was a license to use the patented process.   It was such a license in connection with the apparatus and its necessary repairs, but not to use the process in connection with a new, different, and enlarged creamery or number of creameries.   The infringement of the first claim of the Cooley patent by the use of the new creamery admits of no extended discussion.

So much of the Butler invention as appertains to this case was said in the specification to consist "in a milk-setting vessel

adapted for raising cream by sealing in water, having an overhanging cover and internal supports for raising the cover slightly above the vessel." The construction and advantages of this cover are thus described:

"Q is a flaring and elevated cover for the milk vessel, its top being elevated somewhat above the top edge of the vessel by means of supports or rests, r, r, inside the cover. These supports may be simply bent wires affixed to the cover, or they might be projections on the top of the can itself, This acts as a deodorizer for carrying off the taint or odor of vegetables which may have been fed to the cows; and when the whole is water-sealed by immersing the vessel and its secured cover under water this raised cover allows the gases and animal heat to pass freely from the milk into the water, while at the same time sealing the milk from the outer atmosphere. With this raised cover I find I can work the creamer with about 5 degrees higher temperature than without it, and can raise cream in less time, because the cooling effect of the water is more directly upon the milk."

The claims which were infringed are the 2d, 5th, 7th, and 8th, and are as follows:

"(2) A milk-setting vessel, adapted for raising cream by sealing in water, having an overhanging cover and internal supports for raising the cover slightly above the vessel, as and for the purposes set forth." "(5) A milk-setting vessel, adapted for raising cream by sealing in water, having an overhanging cover, and the supports for raising the cover slightly above the vessel, as and for the purposes set forth." "(7) A milk-setting vessel, adapted for raising cream by standing in water, and having supports for a raised cover, provided with a cover adapted to be held raised above the vessel by means of such supports, but with its lower edge below the top of the vessel. (8) A milk-setting vessel adapted for raising cream by standing in water, and having supports for a raised cover, provided with a cover adapted to be held raised above the vessel by means of such supports, but with its lower edge below the top of the vessel and to dip into the water surrounding the vessel."

Experience proved that if the milk in a can of a Cooley creamery had derived an unpleasant odor from the substances upon which the cows had fed, and the can was hermetically sealed, the butter would be injuriously affected; but it was ascertained that, if exhalation was permitted, the water would absorb the odors with which the milk was affected, without otherwise influencing or or changing the qualities of the milk. Butler first made this discovery permanently useful by his raised cover, which permitted this exhalation, and relieved the milk from odor or taint without the introduction of external air. The Garrard cooler is again relied upon as an anticipation, but, in addition to what has been previously said, its cover had no supports on the inside of the cover, or projections on the vessel containing the milk, which are the distinctive features of the Butler patent. The defendant introduced as an anticipation letters patent No. 180,962, dated August 8, 1876, to Theodore R. Timby, for an improved apparatus for manufacturing solar salt. In the manufacture of "solar salt" the brine is exposed in vats to the action of the sun and wind, which are covered by movable sheds during rains. Timby's cover was made of opaque material, with an upper surface of dark color, so as to absorb a large amount of solar heat. To prevent the displacement of the heated air by cooler currents of wind, the cover

was made with inclined sides, so as to deflect the wind. The cover was elevated somewhat by corner posts extending above the sides of the vat for the purpose of allowing air to enter and impinge obliquely upon the lower surface of the cover, and to be deflected upon the surface of the brine. It seems unnecessary to enlarge upon the dissimilarity between a brine vat with the Timby raised wind and air cover and a Cooley creamery with the Butler cover.

The patent to John G. Cherry, No. 219,910, dated September 23, 1879, was introduced by the complainant in rebuttal in the case upon the Cooley patent, in explanation of the record in Boyd v. Cherry, 4 McCrary, 70, 50 Fed. Rep. 281. No testimony was given in regard to this patent by any one, and it was not mentioned in the pleadings of either party. By stipulation testimony taken in either of the cases could be used in the other of said cases. Under this stipulation the defendant claims that the Cherry patent may be used in the case upon the Butler patent as an anticipation. It is apparently a fact, though the fact is not proved by competent evidence, that the Butler application antedated the Cherry application. It was not the intention of the stipulation that a patent offered for one purpose by the complainant in one case could be used by the defendant in the other case as an anticipation, without an amendment of the pleadings, and without a scintilla of testimony by which the complainant could be warned so as to offer seasonable testimony in regard to the history and character of the alleged anticipation, before the record reached the appellate court. We therefore do not give attention to the Cherry patent.

The decrees of the circuit court are affirmed, with costs.