## BROWN v. PUGET SOUND REDUCTION CO.

(Circuit Court, D. Washington, N. D. July 3, 1901.)

1. PATENTS—INFRINGEMENT—ORE-ROASTING FURNACES.
   The Brown patent, No. 471,264, for an ore-roasting furnace, claim 1, *held* infringed by a furnace constructed in accordance with the Ropp patent, No. 532,013.

2. SAME.
   The right of a purchaser of a patented machine or structure to use the patent is merely an incident to his ownership and use of the particular machine or structure purchased, and the fact that the same proves defective, and incapable of being used, gives him no right to substitute therefor an infringing machine.

3. SAME.
   The Brown patent, No. 471,264, for an ore-roasting furnace, claim 1, construed on an application for a preliminary injunction, and *held* not infringed by the Holthoff-Wethey furnace, constructed under patents Nos. 559,647 and 640,058, which contains no "supplemental chamber" in which the carriers for operating the rabbles or stirrers travel, such as is

made an element in the combination of the claim, but consists of one oven, having a single wall, the track for the carriers being placed on the outside of such wall, and the slot in the same through which the stirring rods enter being closed by a series of shutters which swing to permit the rod to pass, and then drop back into place, while the upper part of the furnace above the slot is supported by steel columns standing outside of such track.

Bill for an injunction by Horace F. Brown, the patentee named in United States letters patent No. 471,264, for an ore-roasting furnace, complaining of an infringement of said patent by the Puget Sound Reduction Company, in the use of an ore-roasting furnace constructed according to the specifications in United States letters patent No. 532,013, issued to Alfred Ropp, and in the use of another ore-roasting furnace constructed according to the specifications of United States letters patent No. 559,647 and No. 640,058, issued to Arthur Wethey. Heard upon an application by the complainant for an injunction pendente lite. Injunction granted as to the Ropp furnace, and denied as to the Wethey furnace.

Charles E. Shepard (P. C. Dyrenforth and Douglas Dyrenforth, of counsel), for complainant.

Francis H. Brownell (Winkler, Flanders, Smith, Bottum & Vilas, of counsel), for defendant.

HANFORD, District Judge. The defendant is the proprietor of, and engaged in operating, ore-smelting works at Everett, in the state of Washington, and has set up for use in its establishment one ore-roasting furnace constructed by representatives of the complainant according to the specifications of his patent; also one ore-roasting furnace constructed by the Park & Lacey Company according to the specifications of the Ropp patent; and a third ore-roasting furnace of the style known as the "Holthoff-Wethey Furnace," constructed by the Edward P. Allis Company, according to the specifications of the Wethey patents. The several patents referred to all cover improvements in apparatus for stirring the ore during the process of roasting, and moving it continuously upon the hearth from the feeding hopper to the discharge end of the oven. Previous to Mr. Brown's invention, the process of rabbling the heated ore in reverberating furnaces was done either by manual labor by means of rakes thrust into the oven through side openings, or by mechanism entirely within the oven, and exposed to the injurious effects of heat, fumes, and dust. The hand operation was slow and expensive, and all machinery operating within the hot chamber of the oven was soon destroyed by the deleterious effects of heat, fumes, and dust. The primary object of Mr. Brown's patent is to utilize power for operating rabbling apparatus, and to protect the running gear from exposure to the heat, fumes, and dust within the ovens; and the means to accomplish this object, described in his specifications, consists of a brick arch containing two central compartments, one above the other, which constitute the ovens in which the ore is roasted. On each side of the central compartment there is a supplemental chamber within the outer walls of the arch, and separated from the central

compartment by a partition wall, which is divided by a longitudinal slot, the upper part of the partition being suspended from above, and the part below the slot being supported by the same construction which supports the floor or hearth of the oven. Within these supplemental chambers a track is constructed upon which trucks are made to run, and from each truck an arm, to which blades for plowing the ore are attached, extends laterally through the slot into the central compartment. The trucks are attached to endless chains mounted upon pulley wheels, which are rotated by mechanical power, and by this means they are impelled to move upon the tracks forward from the feed end of the upper oven to the other end, and down to the tracks below, and back to the starting point, passing revolving doors which close each end; and as the trucks move the blades stir the mass of heated ore within the ovens, and keep it moving gradually from the feed end of the upper oven to an opening in the hearth near the other end, through which it descends to the lower hearth, and is then moved the same way in the opposite direction to the place of discharge. The arch is braced and strengthened by iron or steel T rails set upright outside of the walls, and bound by cross-ties under the bottom and over the top; and the outside walls have openings, with doors, for regulating the admission of air.

In the argument which has been made before me, counsel for the complainant has claimed an infringement by the defendant of only the first claim of the patent, which is in the following words:

"(1) In an ore-roasting furnace, having means for stirring and advancing the ore, a supplemental chamber at the side of the main roasting chamber, and cut off from said main chamber by a wall or partition, and carriers in said supplemental chambers, connected with the stirrers, but removed from the direct action of the heat, fumes, and dust, substantially as herein described."

The validity of the complainant's patent has been adjudicated in the United States circuit court for the district of Colorado, and the decision rendered by Judge Hallett in that case has been affirmed by the United States circuit court of appeals for the Eighth circuit, and in the same case it was also adjudged that a furnace constructed according to the specifications of the Ropp patent infringes the Brown patent (Metallic Extraction Co. v. Brown [C. C. A.] 104 Fed. 345); and the decision referred to has been followed in another district within the Eighth circuit. After reading all the affidavits filed in this case, and giving due consideration to the arguments, I find that no new evidence of sufficient importance to distinguish this case from the cases which have been adjudged in the Eighth circuit has been furnished, and the opinions referred to appear to me to rest upon the facts and the law. While this court is not bound by the rule of comity to decide a patent case contrary to a belief in the mind of the judge as to the right of the matter, still the decisions of other courts should have weight in resolving any doubts. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485–496, 20 Sup. Ct. 708, 44 L. Ed. 856. I consider that the reasons set forth in the opinions of Judge Hallett and Judge Thayer are good and sufficient, and I find no ground to justify this court in rendering a conflicting decision.

The defendant makes a special defense, and claims the right to use the Ropp furnace on the ground that it was installed as a substitute for one of Brown's patented furnaces, which it bought and paid for, and which was removed because it did not work satisfactorily. In an affidavit by the manager of the defendant company it is asserted that two of Brown's furnaces were installed by the defendant, and that they proved to be defective and unsatisfactory, so that the defendant could not compete with other smelting companies because of expenses and losses occasioned by frequent interruptions caused by the breaking of the partition walls, which made it necessary to shut down and cool off, as the interior walls in the Brown furnace are not accessible, and cannot be repaired without cooling the entire furnace sufficiently for workmen to enter them; and that, having paid the complainant a royalty for the use of his patent, he should not be heard to complain because the defendant has incurred the expense of constructing a new furnace upon a different pattern. This special defense cannot be maintained. It is well settled by numerous authorities that the monopoly granted by letters patent is absolute during the term of the patent, and the owner of it is entitled by the law to prohibit all use of infringing machines and structures. The purchaser of a patented machine or structure has the right to use what he has bought, but no right to make another machine or structure like it, nor to buy one from an infringer. His right to use the patent is a mere incident to his ownership of the particular machine or structure sold to him by the patentee, and when it is worn out or destroyed the right to use the invention ceases. Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66; Cotton Tie Co. v. Simmons, 106 U. S. 89–95, 1 Sup. Ct. 52, 27 L. Ed. 79; Wade v. Metcalf (C. C.) 16 Fed. 130; Machine Co. v. Gibson (C. C.) 46 Fed. 488; Id. (C. C.) 50 Fed. 423; Id., 5 C. C. A. 451, 56 Fed. 143; Alaska Packers' Ass'n v. Pacific Steam Whaling Co. (C. C.) 93 Fed. 672. Upon the showing made, the complainant is clearly entitled to have an injunction restraining the defendant from making any further use of the Ropp furnace until the final hearing.

The Holthoff-Wethey furnace, according to the description of it in the specifications of the patent and the model exhibited to the court, is double-decked, like the Brown furnace, and closely resembles it in other particulars, to such an extent that a mere casual observation would probably create an impression that the chief difference between the two is in the superior construction of the Holthoff-Wethey furnace; but to reach a just determination of the rights of the parties a close examination of the two patents is necessary. The Holthoff-Wethey furnace has but a single oven, the ceiling and roof of which is arched; the side walls have longitudinal slots. At each end there are swinging doors. Immediately below the roasting hearth there is a cooling floor of the same length and breadth as the roasting hearth, but this cooling floor is not inclosed by side walls or swinging doors at the ends. There are no supplemental chambers on each side of the roasting hearth, and the slotted walls of the oven are not interior partitions, but are at all times accessible from the outside. Outside of each wall there is a row of perpendicular steel columns

supporting beams which support the oven. The columns connect with cross-ties, giving additional strength to the entire structure. In the spaces between the rows of upright columns and the side walls single rails are laid, upon which trucks actuated by endless chains and sprockets and mechanical power make circuits from the feeding end of the oven to its other end, thence to the plane of the cooling floor, and back to the starting point, passing swinging doors at each end. The trucks are connected in pairs by a shaft reaching from a truck on one track through the slotted walls and across the oven to its connection with a truck on the track on the opposite side, and the shaft inside the oven has appended to it blades, which stir and move the ore as the trucks move from end to end of the oven, and, passing down to the floor below, continue to stir and move the mass of ore on the cooling floor as it is gradually moved towards the place of discharge. Another important feature of the Holthoff-Wethey furnace is the means provided for closing the slots. This is accomplished by a series of fan-shaped pieces of metal, each being suspended by a pin, which acts as a pivot. As the shaft moves onward, and comes in contact with these suspended pieces of metal, they each swing forward and upward, and then, by force of their own weight, drop back into their proper positions, acting as shutters to keep outside air from entering the oven, and to retain the heat, fumes, and dust within. The Holthoff-Wethey furnace is well calculated to avoid the principal defects found in the Brown patent, one of which is made the cause of complaint by the defendant, viz. that the suspended part of the partition wall will not maintain its integrity very long when the furnace is in use, and its nonaccessibility causes great inconvenience. A smelter, to be profitable, should be operated continuously; and frequent stoppages to repair interior partition walls necessarily increase the expense of operating, and reduce the profits. In the next place, the open slot between the oven and the supplemental chambers prevents complete accomplishment of the primary object of Brown's invention. With the opening in the partition wall, the carriers can only be partially protected from heat, and the accumulation of fumes and dust must be nearly as rapid in the supplemental chambers as in the central compartments; but the question to be decided is not whether the Holthoff-Wethey furnace is an improvement over the Brown furnace, but whether it infringes rights granted to the complainant, because, during the life of the complainant's patent, he is entitled to suppress the use of improvements which do in fact embody the invention covered by his patent. In considering the question of infringement it is necessary to consider that Mr. Brown's invention does not consist of an original creation. His patent is for a combination of well-known devices and materials to supply means for applying mechanical power so as to operate machinery, and make it useful in a way not previously known. Mr. Brown is not to be considered as a pioneer in the art, in the sense of being the first to plan and construct machinery for rabbling. His idea is only one step in the evolution of perfected rabbling apparatus. Now, looking to the first claim of his patent, which is the only claim brought in question at the present time, it is strikingly apparent that

one of the main elements of the claim is the supplemental chambers in which the tracks for the carriers to run upon are situated. The outside walls of these supplemental chambers are also outside walls of the arch, and support and strengthen the entire structure. These outside walls not only inclose the supplemental chambers, but they inclose the central compartments as well. In the Holthoff-Wethey furnace there are no partition walls separate and distinct from the outside walls of the arch, and, the slotted walls being the only walls under the arch, it is impossible to find supplemental chambers, or anything corresponding to this element of Brown's patent. The rows of upright steel columns outside of the arch support and strengthen the structure, and to that extent they are a substitute for the outside walls, which form a part of Brown's construction; but they are not walls. The fan-shaped pivoted metal shutters which operate automatically to keep the slots closed perform in part the function of an outside wall, but they give no support or strength to the structure; therefore they are not outside walls; and the shutters and columns together do not constitute outside walls, because they do not act in combination, nor inclose the tracks on which the carriers run. There is no equivalent for this element of the first claim of Brown's patent. The spaces in which the carriers run are not inclosed, and they are not supplemental chambers. Counsel for the complainant has argued that the supplemental chamber described in Brown's patent is a corridor, and that the space between the rows of upright steel columns and the slotted walls of the Holthoff-Wethey furnace is also a corridor, and therefore an equivalent for the element of a supplemental chamber of the Brown patent. I do not think the case can be aided at all by giving to the element which in the Brown patent is named "supplemental chamber" any different name. The fact remains that the open spaces in which the carriers of the Holthoff-Wethey furnace run are not identical with the inclosed chambers in which the carriers of the Brown patent do their work. If a person should attempt to prove that a house having only one room is in fact a two-room house by showing that the space within the walls constitutes one room, and that all of the outdoors constitutes the second room, because it is space separated by the walls of the house from the interior, the fallacy would not be greater than the contention that the Holthoff-Wethey furnace contains the element of a supplemental chamber similar to that described in the Brown patent, or any equivalent therefor.

In my examination of the authorities bearing upon the question at issue, I have found no case which more nearly resembles the one under consideration than Bussey v. Manufacturing Co., 110 U. S. 131–146, 4 Sup. Ct. 38, 28 L. Ed. 95, which was a case involving improvements in reservoir cooking stoves. In that case the plaintiff's patented stove was described as a cooking stove having an oven; a culinary boiler or hot-water reservoir, arranged oppositie to the rear upright side or end of the oven; and an exit flue extending from the central vertical flue of said stove at a point below the top of the oven under or across the bottom of the reservoir, and from thence up along the rear upright side of said boiler or reservior to the draft

pipe. And the claims of the patent which were litigated were as follows:

"(1) A diving-flue cooking stove, with the exit flue so constructed as to inclose on the sides and bottom the culinary boiler or hot-water reservoir, B. (2) A diving-flue cooking stove, with the exit flue constructed across the bottom, and up the rear upright side of the culinary or hot-water reservoir, B. (3) A diving-flue cooking stove constructed with an exit passage, F, below the top of the oven, and an exit flue, E, E, in combination with an uncased reservoir, B, attached to the rear of the stove, and placed just above such exit passage, and so arranged that the gases of combustion, in passing through such exit flue, will impinge upon or come in direct contact with said reservoir, substantially as and for the purpose hereinbefore specified. (4) An exit passage, F, constructed in the rear of a diving-flue cooking stove, and below the top of the oven, in combination with an uncased reservoir, B, attached to the rear of the stove, the bottom of which reservoir is also below the top of the oven. and so arranged that the gases of combustion will come in contact with and heat such reservoir by a direct draft from the fire box to the smoke pipe. (5) In a cooking stove wherein the rear end vertical plate, or a portion of the same, has been removed for the purpose of heating a reservoir placed in the rear thereof, the shield plate, w, w, in combination with the uncased reservoir, b, and the rear end vertical flues, K, L, and L', substantially as and for the purpose hereinbefore described and specified."

The defendant's stove is described in the opinion of the court as follows:

"The defendant's stove has three flues and an exit passage below the top of the oven, and a reservoir, the bottom of which is below the top of the oven; but no part of the rear end vertical plate is removed so as to allow the gases of combustion to come into direct contact with the front of the reservoir, nor is any of such plate employed as the plate, w, w, of the patent, but there is a dead air space between the rear plate of the flue and the front of the reservoir. The exit flue is not a narrow one, carried across the middle of the bottom of the reservoir, as in the patent, but the products of combustion, on leaving the flue space, pass into a chamber beneath the reservoir, the area of which is co-extensive with the entire surface of the bottom of the reservoir; and the vertical passage out of such chamber is not one outside of the rear of the reservoir, but is one in and through the body of the reservoir, and removable with it."

The differences between the rival stoves as described were not nearly so radical as the differences in the construction of the smelting furnaces which I have to compare with each other in this case, and yet the supreme court decided that the defendant's stove was not' an infringement of the plaintiff's patent. In that case a narrow flue extending across the middle of the bottom of the reservoir was considered by the supreme court to be a substantial part of the plaintiff's patent, and that infringement was avoided by a construction in which the exit flue, instead of being narrow, was expanded to the full width of the bottom of the reservoir; and yet the expansion which in that case was sufficient to avoid infringement is not comparable with the expansion of the supplemental chambers described in Brown's patent by the different construction of the Holthoff-Wethey furnace. This construction introduces into the plan of the furnace new elements, a new combination, and a new result. Electric Railroad Signal Co. v. Hall Railroad Signal Co., 114 U. S. 100, 5 Sup. Ct. 1069, 29 L. Ed. 96.

An argument is made upon the affidavit of Mr. Cornthwaite, in

which he states grounds for an inference that the third furnace in the defendant's smelter had been constructed with outside walls inclosing the spaces between the rows of upright steel columns and the slotted walls of the oven, and that brickwork filling the spaces between the columns has been removed. But this evidence is not material to be considered upon this application for an injunction. Infringements in the past may be the basis for claiming damages, but, if use of the unlawful construction has ceased, there is no ground for demanding preventive relief. I have given due consideration to the statements and arguments contained in the affidavits of experts, as well as the arguments of counsel and the adjudged cases, and it is my opinion that there is a very great preponderance in weight of argument in favor of the proposition that the Holthoff-Wethey furnace is not an infringement of the first claim of the plaintiff's patent, because the Holthoff-Wethey construction dispenses with the supplemental chamber, which is an essential part of the claim referred to. Upon the final hearing the complainant may be able to present reasons sufficient to change the opinion of the court, but, as at present advised, the court feels constrained to deny the plaintiff's application for an injunction to restrain the use by the defendant of the third furnace described in this opinion.